IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

OLIVER L. CANADAY,
      Plaintiff,

vs.                              Case No.:  5:09cv247/RS/EMT

MICHAEL W. WYNNE,
      Defendant.
_____/

## ORDER, REPORT AND RECOMMENDATION

This cause filed pro se by Plaintiff Oliver Canaday ("Canaday") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), is before the court upon the Motion to Dismiss or in the Alternative, Motion for Summary Judgment filed by Defendant Michael W. Wynne, in his official capacity as Secretary of the Department of the Air Force ("the Air Force") (Doc. 12).[1]  Also pending are Canaday's Motion for Default Judgment (Doc. 15), Canaday's "Motion to Court, Void Defendant's Motion to Dismiss or in the Alternative Motion for Summary Judgment" (Doc. 16), Canaday's "Motion to Court, Defendant to Answer Every Element of Plaintiff's Claim by, to [sic] Admit or Deny Every Element and Defendant's Answer [sic] Must State any Affirmative Defenses" (Doc. 22), and Canaday's "Motion to Court, Request, Upon Leave of the Court" (Doc. 23).  As set forth below, the court grants in part and denies in part Canaday's "Motion to Court, Request, Upon Leave of the Court" (Doc. 23).  It also recommends that Canaday's remaining motions be denied, and the Air Force's motion to dismiss or for summary judgment be granted.

I.      PROCEDURAL HISTORY

_____

[1] The court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

Canaday, who is a Caucasian white male, filed an informal complaint of discrimination based upon race, color, and gender against the Air Force with the Equal Employment Opportunity counselor for the Tyndall Air Force Base on September 7, 2007 (Doc. 12 at 3, Ex. 1). According to the written EEO Counselor's Report, the attempt at informal resolution was unsuccessful (Doc. 12, Ex. 1). On October 30, 2007, Canaday filed a formal complaint of discrimination ("EEOC Complaint") alleging he was treated differently than other employees on the bases of his race, color, and sex when: (1) he failed to receive priority referral consideration for re-promotion to GS-12; (2) he was left in the Education Center Supervisor position (a GS-12 position) as a GS-11 from December 11, 1991, to March 7, 1992 (86 days) with no temporary promotion; and (3) two of his requests for annual leave were disapproved on November 21, 1991, and November 25, 1991 (Doc. 12, Statement of Facts, Ex. 2). On February 27, 2008, the Air Force dismissed Canaday's complaint for failure to comply with applicable time limits (Doc. 12, Ex. 4). Canaday appealed the dismissal to the Equal Employment Opportunity Commission, Office of Federal Operations (EEOC OFO). On August 20, 2009, the EEOC OFO upheld the dismissal, finding that the Air Force properly dismissed the complaint for untimely EEO Counselor contact (Doc. 12 at 3, Ex. 3). The EEOC OFO also found that Canaday had failed to provide sufficient justification for extending or tolling the time limit (*id.*).

Canaday commenced the instant federal case on July 22, 2009, by filing a complaint and paying the filing fee (Doc. 1). The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive actions. *See* N.D. Fla. Loc. R. 72.2(E); *see also* 28 U.S.C. § 636(b)(1)(B)(C); and Fed. R. Civ. P. 72(b). Canaday alleges in his complaint that the Air Force discriminated against him on the bases of his race, color, and sex in connection with the following conduct:

1.      failing to provide priority referral consideration for re-promotion to GS-12 from December 11, 1991 through March 7, 1992;

2.      failing to grant him temporary promotion to GS-12 for the period December 11, 1991 through March 7, 1992, with pay and "career credit" effective immediately upon his assumption of supervisory duties for the Education Center (Canaday concedes that on March 22, 1995, he was retroactively granted "career credit" for temporary promotion to GS-12 for that period, but he contends he was not given

back pay, and the fact that the "career credit" was not immediately effective in 1991 affected his consideration for promotions from December of 1991 to March of 1995);

     3.       failing to select him for promotion to GS-13 after July 15, 1994;

     4.       failing to make his temporary promotion to GS-12 for the period March of 1995 through May 6, 1995 effective immediately upon his assumption of supervisory duties on March 3 instead of March 19 (Plaintiff admits he was given pay and career credit for temporary promotion to GS-12 from March 19, 1995 through May 6, 1995);

     5.       failing to make his temporary promotion to GS-13 for the month of November, 2004 effective immediately upon his assumption of supervisory duties on November 1 instead of November 14, 2004 (Plaintiff admits he was given pay and career credit for temporary promotion to GS-13 from November 14, 2004 through November 27, 2004);

     6.       failing to grant him temporary promotion to GS-13 for the entire period he performed supervisory duties in the education center from December 4, 2005 through April 30, 2006 (Plaintiff admits he was given pay and career credit for temporary promotion to GS-13 from December 25, 2005 through April 1, 2006);

     7.       failing to select him for temporary promotion on August 6, 2007.

(Doc. 1 at 1–13).[2] As relief, Canaday seeks promotion to GS-12 effective December 11, 1991, and promotion to GS-13 effective July 15, 1994, with back pay and compensation for the difference in value of his Thrift Savings Plan ("TSP") (a defined contribution retirement savings plan for federal employees) caused by the failure to promote him in 1991 and 1994 (Doc. 1 at 13). He additionally seeks compensatory damages in the amount of $300,000.00 for lost income, missed bonuses and awards, and lost investment opportunities (including investment in a more expensive home in 1992 and adjacent farm property in North Carolina), and $50,000.00 for emotional distress (*id.*).

     On February 4, 2010, the Air Force filed its Motion to Dismiss or in the Alternative Motion for Summary Judgment with several exhibits (Doc. 12). The Air Force relied upon matters outside the pleadings; therefore, the court issued an advisement order informing the parties of the importance and ramifications of summary judgment consideration and provided them with

---

     [2] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

information as to the requirements for materials submitted for Rule 56 review (Doc. 13). Canaday filed a Motion for Default Judgment with a supporting affidavit and exhibits (Doc. 15). He additionally filed a "Motion to Court, Void Defendant's Motion to Dismiss or in the Alternative Motion for Summary Judgment" with a supporting affidavit and exhibits (Doc. 16). The Air Force responded in opposition to the motions (Docs. 17, 18). Canaday then filed a "Motion to Court, Defendant to Answer Every Element of Plaintiff's Claim by, to [sic] Admit or Deny Every Element and Defendant's Answer [sic] Must State any Affirmative Defenses" (Doc. 22) and a "Motion to Court, Request, Upon Leave of the Court" (Doc. 23), both with supporting affidavits and exhibits. The Air Force responded in opposition to the motions (Docs. 24, 25).

Liberally construing Canaday's pending motions, the undersigned will consider his "Motion to Court, Void Defendant's Motion to Dismiss or in the Alternative Motion for Summary Judgment" and the affidavit and exhibits attached thereto (Doc. 16) and his "Motion to Court, Request, Upon Leave of the Court" and the affidavit and exhibits attached thereto (Doc. 23) as responses to the Air Force's motion to dismiss or for summary judgment.

II.     CANADAY'S MOTION FOR DEFAULT JUDGMENT

As a threshold, potentially-dispositive, matter the court addresses Canaday's request for entry of default and motion for default judgment (Docs. 14, 15, 16). On February 5, 2010, Canaday filed a request for entry of default by the clerk (Doc. 14, attached Request for Entry of Default). In his complaint and affidavits submitted in support of his request for entry of default and default judgment, Plaintiff requests the following relief: (1) $300,000.00 in damages, (2) promotion to GS-12 effective December 11, 1991, with back pay and compensation for the difference in value of his TSP funds due to the failure to promote him on that date, (3) promotion to GS-13 effective July 15, 1994, with back pay and compensation for the difference in value of his TSP funds due to the failure to promote him on that date, and (4) $50,000.00 in damages for emotional distress (Doc. 14, Affidavit in Support of Request for Entry of Default). On February 17, 2010, Canaday filed a motion for default judgment, pursuant to Rule 55(b)(1) of the Federal Rules of Civil Procedure (Doc. 15). As grounds for his motion, Canaday states the Air Force was served with process on August 13, 2009, and failed to file an answer or Rule 12 motion within sixty (60) days, or by October 20, 2009 (*id.* at 1–6). Canaday acknowledges that the Air Force filed a motion to dismiss on February

4, 2010, prior to the filing of the request for default or motion for default judgment; but he contends he is still entitled to a default judgment since the Air Force's motion was filed well after the 60-day deadline for serving a response to the complaint (*id.*).

The Air Force opposes the motion for default judgment on two grounds. First, Canaday failed to satisfy the requirements for entry of a default judgment against the United States, set forth in Rule 55(d) of the Federal Rules of Civil Procedure (Doc. 18). Second, Canaday's proof of service fails to show sufficient service of process upon the Air Force (*id.*).

Rule 55 provides, in relevant part:

**(a) Entering a Default**. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

**(b) Entering a Default Judgment.**

**(1) *By the Clerk***. If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.

**(2) *By the Court***. In all other cases, the party must apply to the court for a default judgment. . . . If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:

    **(A)** conduct an accounting;

    **(B)** determine the amount of damages;

    **(C)** establish the truth of any allegation by evidence; or

    **(D)** investigate any other matter.

**(d) Judgment Against the United States.** A default judgment may be entered against the United States, its officers, or its agencies only if the claimant establishes a claim or right to relief by evidence that satisfies the court.

Fed. R. Civ. P. 55(b, d).

Initially, the proofs of service submitted by Canaday fail to demonstrate sufficient service of process. Rule 4 of the Federal Rules of Civil Procedure provides, in relevant part:

> **(i) Serving the United States and Its Agencies, Corporations, Officers, or Employees.**
>
> **(1)** *United States.* To serve the United States, a party must:
>
> > (A)(i) deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought—or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk—or
> >
> > (ii) send a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office;
> >
> > (B) send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C.; and
> >
> > (C) if the action challenges an order of a nonparty agency or officer of the United States, send a copy of each by registered or certified mail to the agency or officer.
>
> **(2)** *Agency; Corporation; Officer or Employee Sued in an Official Capacity.* To serve a United States agency or corporation, or a United States officer or employee sued only in an official capacity, a party must serve the United States and also send a copy of the summons and of the complaint by registered or certified mail to the agency, corporation, officer, or employee.

Fed. R. Civ. P. 4(i).

In the instant case, Canaday's proof of service upon the United States attorney for the Northern District of Florida shows that he sent a copy of the summons and complaint by certified mail to "United States Attorney"; he did not send it to the civil process clerk (Doc. 15 at 14). This service was, therefore, invalid, and cannot form the basis of a default judgment.

Additionally, Canaday is not entitled to entry of default judgment by the clerk because the Air Force has not been defaulted for not appearing. *See* Fed. R. Civ. P. 55(b)(1); *see also* 46 Am. Jur. 2d Judgments § 272 (Mar. 2010). By the time Canaday sought a clerk's entry of default, the Air Force had appeared by filing a motion to dismiss. Moreover, Canaday is not entitled to entry of

default judgment by the court. Canaday has failed to submit sufficient evidence establishing a claim or right to relief. The evidence submitted by Canaday fails to demonstrate that he timely exhausted his administrative remedies with respect to his claims.

Notwithstanding the foregoing, it is the law of this circuit that default is to be used sparingly:

> Entry of judgment by default is a drastic remedy which should be used only in extreme situations, as the court has available to it a wide range of lesser sanctions. The former Fifth Circuit has adopted the view that such action is too harsh except in extreme circumstances. Moreover, we must respect the usual preference that cases be heard on the merits rather than resorting to sanctions that deprive a litigant of his day in court.

Wahl v. McIver, 773 F.2d 1169, 1174 (11th Cir.1985) (citations omitted). The record in this case shows that the Air Force filed its motion to dismiss before Canaday filed his motion for default judgment. The Air Force's motion was filed a relatively short time after the deadline for responsive pleadings. Canaday has not shown that the Air Force's failure to file an answer to his complaint prejudiced him in any way. Indeed, Canaday similarly delayed in prosecuting this action (*see* Doc. 11). The undersigned finds that "exceptional circumstances that would justify entry of a default judgment are not present." *Id.*; *see, e.g.*, Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1317 (11th Cir. 2002) (holding that district court did not abuse its discretion by denying motion for entry of default judgment; defendant filed a notice of appearance before the motion for default judgment was filed, defendant filed a motion to dismiss a short time after the deadline for responsive pleadings, and plaintiff failed to show he was prejudiced); *see also, e.g.*, Owens v. Benton, No. 05-13782, 190 Fed. Appx. 762, 763 (11th Cir. July 5, 2006) (holding that district court did not abuse its discretion by denying motion for entry of default judgment where plaintiff failed to assert any prejudice to his interests). Therefore, the undersigned recommends that Canaday's motion for default judgment (Doc. 15) and "Motion to Court, Defendant to Answer Every Element of Plaintiff's Claim by, to [sic] Admit or Deny Every Element and Defendant's Answer [sic] Must State any Affirmative Defenses" (Doc. 22) be denied.

III.    THE AIR FORCE'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

The Air Force seeks dismissal of Canaday's claims based upon his failure to exhaust administrative remedies (Doc. 12). The Air Force states the evidence shows that Canaday contacted

the EEO office at Tyndall Air Force Base on September 7, 2007, alleging he was treated differently than other employees when (1) he did not receive priority referral consideration for re-promotion to GS-12 between September of 1991 and March of 1992; (2) he was left in the GS-12 level Education Center Supervisor position as a GS-11 for 86 days (from December 11, 1991 to March 7, 1992) with no temporary promotion to the higher GS level; and (3) two of his requests for annual leave were disapproved (Doc. 12 at 9, Ex. 1). Additionally, Canaday presented only those three claims on appeal to the EEOC (Doc. 12 at 9–10, Exs. 2, 3). The EEOC dismissed the claims on the ground that Canaday failed to contact the agency's EEO counselor within forty-five (45) days of their occurrence. Therefore, the Air Force contends, all of Canaday's claims raised in the instant Title VII action should be dismissed for Canaday's failure to timely exhaust administrative remedies (*id.*).

Under Title VII, it is unlawful for a private employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, [or] sex, . . . ." 42 U.S.C. § 2000e-2(a)(1). Title VII contains a separate provision that applies to federal agencies. *See* 42 U.S.C. § 2000e-16(a) ("All personnel actions affecting employees . . . in military departments . . . shall be made free from any discrimination based on race, color, [or] sex, . . . ."). The Eleventh Circuit has concluded that, despite the differences in language, Title VII places the same restrictions on federal agencies as it does on private employers. *See, e.g.*, Thomas v. Miami Veterans Medical Center, 290 Fed. Appx. 317, 319, 2008 WL 3906836, at **2 (11th Cir. 2008) (unpublished).

"A federal employee must pursue and exhaust [his] administrative remedies as a jurisdictional prerequisite to filing a Title VII action." Crawford v. Babbitt, 186 F.3d 1322, 1326 (11th Cir. 1999). In accordance with the congressional design, the EEOC adopted regulations for federal employees to present their claims to the agency. *See* 29 C.F.R. § 1614.101 *et seq.* These regulations require a federal employee with a discrimination complaint to contact an EEO counselor from the employing agency within 45 days of the "effective date" of the challenged action, in an effort to resolve the complaint informally. *See* 42 U.S.C. § 2000e-16(b); 29 C.F.R. § 1614.105(a)(1); *see also* Mullins v. Crowell, 228 F.3d 1305, 1310–11 (11th Cir. 2000) (applying 45-day exhaustion requirement to federal employees raising claims under the Rehabilitation Act).

The EEOC "shall extend the 45-day limit . . . when the individual shows . . . that he or she did not know and reasonably should not have [ ] known that the . . . personnel action occurred." 29 C.F.R. § 1614.105(a)(2).  An agency shall dismiss a complaint that fails to comply with the time limits in § 1614.105.  *Id.*; § 1614.107(a)(2).  If informal attempts at resolution are unsuccessful, at the final counseling session the EEO counselor notifies the employee of the right to file a formal complaint with the agency.  29 C.F.R. 1614.105(d).  Thereafter, the complaint can proceed through various stages, including agency investigation (29 C.F.R. § 1614.107), an appeal before an EEOC administrative judge (29 C.F.R. § 1614.109(c)), and a final agency decision (29 C.F.R. § 1614 .109(c)).  Timely contact with an EEO counselor and the filing of a formal complaint are the first steps to initiate the administrative process.  Generally, when the claimant does not initiate contact within the 45-day charging period, the claim is barred for failure to exhaust administrative remedies.  *See* Brown v. Snow, 440 F.3d 1259, 1264–65 (11th Cir. 2006) (affirming district court's determination that defendant failed to establish that plaintiff did not initiate contact within 45-day charging period); Crawford, 186 F.3d at 1326–27.

Additionally, with regard to exhaustion, a plaintiff's subsequently filed civil action is limited by the scope of the administrative investigation that "can reasonably be expected to grow out of the charge of discrimination."  Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1280 (11th Cir. 2004) (quotation marks omitted).  The purpose of the exhaustion requirement is "to give the agency the information it needs to investigate and resolve the dispute between the employee and the employer." Brown, 440 F.3d at 1263 (quotation marks omitted).  In evaluating whether an employee exhausted administrative remedies, the court "consider[s] whether the complainant made a good faith effort to comply with the regulations and, particularly, to provide all the relevant, specific information available to him or her."  *Id.* (quotation marks omitted).

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.  *See* Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  "The mere existence of *some* alleged factual dispute between the parties," however, "will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of

*material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986) (emphasis in original). A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A fact is "material" if it may affect the outcome of the case under the applicable substantive law. *See id.*

When a motion for summary judgment is made and properly supported by affidavits, depositions, or answers to interrogatories, the adverse party may not rest on the mere allegations or denials of the moving party's pleadings. Instead, the nonmoving party must respond by affidavits or otherwise and present specific allegations showing that there is a genuine issue of disputed fact for trial. Fed. R. Civ. P. 56(e). In assessing the sufficiency of the evidence, the court must view all the evidence, and all factual inferences reasonably drawn therefrom, in the light most favorable to the nonmoving party. *See* Hairston, 9 F.3d at 918. A mere scintilla of evidence in support of the nonmoving party's position will not suffice to demonstrate a genuine issue of material fact and thereby preclude summary judgment. *See* Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the adverse party fails to show a genuine issue of material fact, summary judgment, if appropriate, may be entered against the nonmoving party.

In the instant case, the summary judgment evidence demonstrates that the only instances of discrimination raised by Canaday in the administrative proceedings were the following events that occurred between September of 1991 and March of 1992: (1) he failed to receive priority referral consideration for re-promotion to GS-12; (2) he was left in the Education Center Supervisor position (a GS-12 position) as a GS-11 from December 11, 1991, to March 7, 1992 (86 days) with no temporary promotion; and (3) two of his requests for annual leave were disapproved on November 21, 1991, and November 25, 1991 (Doc. 12, Exs. 1–4). Therefore, of the seven claims raised by Canaday in the instant Title VII action, only two of those claims were presented at the administrative level: (1) failure to provide him priority referral consideration for re-promotion to GS-12 from December 11, 1991, through March 7, 1992, and (2) failure to grant him temporary promotion to GS-12 for the period December 11, 1991, through March 7, 1992, with pay and "career credit"

effective immediately upon his assumption of supervisory duties for the Education Center.[3] Accordingly, the remainder of Canaday's claims should be dismissed for Canaday's failure to exhaust administrative remedies.[4]

With regard to the two claims actually presented at the administrative level, the court will address Canaday's arguments that statutory and equitable principles render his claims timely. Canaday's statutory argument is that his claims are essentially disparate pay claims, therefore, they are timely pursuant to the Lilly Ledbetter Fair Pay Act of 2009 (*see* Doc. 16). In support of this argument, he asserts his claims should be characterized as disparate pay claims because (1) his pay would have been higher if he had received priority consideration and been selected for the GS-12 supervisor's position filled by a minority female on March 7, 1992; and (2) he would have been eligible for promotion to a GS-13 more quickly, and thus received higher pay, if his temporary promotion for the period December 11, 1991, through March 7, 1992, had been immediately effective (as previously discussed, Canaday concedes he was retroactively granted credit for the temporary promotion on March 22, 1995, but he contends he was not given back pay, and the fact that the career credit was not immediately effective affected his consideration for promotions from December of 1991 to March of 1995).

The Lilly Ledbetter Fair Pay Act of 2009, Pub.L. No. 111-2, 123 Stat. 5 (2009), signed into law on January 29, 2009, and made retroactive to all Title VII wage discrimination claims pending on or after May 28, 2007, Pub.L. No. 111-2, § 6, 123 Stat. 5, 7 (2009), amended Title VII of the Civil Rights Act of 1964 to state:

> . . . an unlawful practice occurs, with respect to discrimination in compensation in violation of [Title VII], when a discriminatory compensation decision or other

---

[3] The court notes that Canaday is pursuing the issue of the disapproval of two leave requests in November of 1991 in a separate Title VII action filed in the court, <u>Canaday v. Wynne</u>, Case No. 3:09cv8/RS/MD.

[4] Those claims include the following: (1) failing to select him for promotion to GS-13 after July 15, 1994; (2) failing to make his temporary promotion to GS-12 for the period March of 1995 through May 6, 1995, effective immediately upon his assumption of supervisory duties on March 3 instead of March 19; (3) failing to make his temporary promotion to GS-13 for the month of November 2004 effective immediately upon his assumption of supervisory duties on November 1 instead of November 14; (4) failing to grant him temporary promotion to GS-13 for the entire period he performed supervisory duties in the education center from December 4, 2005, through April 30, 2006; and (5) failing to select him for temporary promotion on August 6, 2007.

practice is adopted, when a person becomes subject to a discriminatory compensation decision or other practice, or when a person is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

42 U.S.C. § 2000e-5(e)(3)(A). Thus, if the Air Force's decision not to give Canaday priority referral consideration for re-promotion to GS-12 or its decision not to grant him a temporary promotion on December 11, 1991, with pay and credit immediately effective, was a "discriminatory compensation decision or other practice," the Act would revive his time-barred claims for non-promotion.

As of this date, the Eleventh Circuit has not addressed the issue of whether the phrase "discriminatory compensation decision or other practice," in the Act refers to a decision to promote one employee but not another to a more remunerative position or a decision as to the effective date of a promotion, which is the essence of the decisions at issue in this case. However, the District of Columbia Circuit has addressed the issue and held that the Act does not apply to such promotion decisions. *See* Schuler v. PricewaterhouseCoopers, LLP, 595 F.3d 370 (D.C. Cir. 2010).

In Schuler, Mr. Schuler argued that the decision not to make him a partner was an "'other act' . . . intertwined with a discriminatory compensation decision" because as a result of that decision he received significantly less remuneration than he would have done as a partner. 595 F.3d at 374. In rejecting Schuler's position, the circuit court reasoned that in employment law the phrase "discrimination in compensation" means paying different wages or providing different benefits to similarly situated employees, not promoting one employee but not another to a more remunerative position. *See id.* at 374–75 (citing Anderson v. Zubieta, 180 F.3d 329, 338 (D.C. Cir. 1999) (plaintiff alleging "wage discrimination" under Title VII must show he was "performing work substantially equal to that of . . . employees . . . compensated at higher rates" (internal quotation marks omitted)); Taylor v. United Parcel Serv., Inc., 554 F.3d 510, 522 (5th Cir. 2008) (prima facie case of "discrimination in compensation"under Title VII involves showing plaintiff "was paid less than a non-member [of the protected class] for work requiring substantially the same responsibility"); MacPherson v. Univ. of Montevallo, 922 F.2d 766, 774 (11th Cir. 1991) (proof of "discrimination in compensation" under ADEA requires showing "similarly situated persons outside the protected age group received higher wages")). In contrast, a discriminatory failure to promote

is actionable regardless of whether it affects an employee's compensation. *See id.* at 375 (citing MacKenzie v. City & County of Denver, 414 F.3d 1266, 1277–78 (10th Cir.2005) (prima facie case of "failure-to-promote" under ADEA requires showing only that qualified plaintiff was rejected and "position was filled by someone outside the protected class"); Cones v. Shalala, 199 F.3d 512, 514, 516 (D.C. Cir. 2000) (prima facie case of "deni[al] [of] a promotion" under Title VII requires showing only that qualified plaintiff was rejected and "either someone not of his protected class filled the position or the position remained vacant and the employer continued to seek applicants")). The Schuler court, therefore, concluded that in context, it did not interpret "compensation decision or other practice" to refer to the decision to promote one employee but not another to a more remunerative position. 595 F.3d at 375.

The Schuler court reasoned that its interpretation of the Act was "fully consistent with the patent intent of the Congress to overrule the Supreme Court's decision in Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618, 127 S. Ct. 2162, 167 L. Ed. 2d 982 (2007), *see* Pub.L. No. 111-2, § 2, 123 Stat. at 5." Schuler, 595 F.3d at 375. The Schuler court noted that the plaintiff in Ledbetter claimed she was the victim of discrimination because, based upon allegedly discriminatory performance reviews, she "was being paid significantly less than any of her male colleagues," and the Supreme Court repeatedly referred to her claim as one of "pay discrimination." *Id.* (quoting Ledbetter, 550 U.S. at 622–23, 638-42). The Supreme Court held that "Ledbetter's claim was untimely because she filed an administrative charge too long after the decisions about her compensation were made." *Id.* (quoting Ledbetter, 550 U.S. at 627). In the Act, Congress characterized Ledbetter as having "significantly impair[ed] . . . protections against discrimination in compensation" and "ignore[d] the reality of wage discrimination." *Id.* (quoting Pub.L. No. 111-2, § 2, 123 Stat. at 5). The Schuler court noted that the fact that Congress drafted and passed the Act specifically in order to overturn Ledbetter strongly suggested the statute was directed at the specific type of discrimination involved in that case and not to other unspecified types of discrimination in employment. Schuler, 595 F.3d at 375.

The Schuler court also reasoned that its interpretation of the phrase "discriminatory compensation decision or other practice" did not essentially read "other practice" out of the statute, noting that the court needed to look no further than Ledbetter itself for an example of a

discriminatory "other practice," namely, giving an employee a poor performance evaluation based upon her sex (or any other unlawful criterion) and then using the evaluation to determine her rate of pay. 595 F.3d at 375 (citing Ledbetter, 550 U.S. at 622).

Based upon the well-reasoned decision of the District of Columbia Circuit in Schuler, the undersigned concludes the decision not to give Canaday priority referral consideration for re-promotion to GS-12 and the decision not to grant him temporary promotion to GS-12 for the period December 11, 1991, through March 7, 1992, with pay and "career credit" effective immediately upon his assumption of supervisory duties for the Education Center do not qualify as "compensation decision[s] or other practice[s]" within the meaning of that phrase in the Act, and neither of Canaday's claims are a claim of "discrimination in compensation." Therefore, the Act does not revive Canaday's claims. *See, e.g.,* Lipscomb v. Mabus, — F. Supp. 2d —, 2010 WL 1198891, at 3 (D.D.C. 2010) (relying on Schuler in holding that Navy's failure to promote plaintiff to GS-11 position, even though it was a noncompetitive "career ladder" promotion, was not a "discriminatory compensation decision or other practice," within the meaning of the Lilly Ledbetter Act); Harris v. Auxilium Pharmaceuticals, Inc., 664 F. Supp. 2d 711, 744–47 (S.D. Tex. 2009) (holding that Lilly Ledbetter Act did not apply to failure-to-promote claims); Ekweani v. Ameriprise Financial, Inc., No. 08-cv-01101/PHX/FJM, 2010 WL 749648, at *5 (D. Ariz. Mar. 3, 2010) (unpublished) (holding that Lilly Ledbetter Act did not apply to failure-to-promote claim; absent allegations of salary inequities apart from promotion-related differences references to pay increases accompanying promotions were insufficient to allege a separate claim for compensation discrimination); Vuong v. New York Life Insurance Company, No. 03-cv-1075, 2009 WL 306391, at *7–9 (S.D.N.Y. 2009) (holding that, while the plaintiff's Title VII compensation claims were resurrected by the Lilly Ledbetter Act, his failure to promote claims were not); Grant v. Pathmark Stores, Inc., No. 06-Civ-5755, 2009 WL 2263795, at *7–9 (S.D.N.Y. July 29, 2009) (same); Rowland v. Certainteed Corporation, et al, No. 08-3671, 2009 WL 1444413, at *6 (E.D. Penn. May 21, 2009) (holding that, since the plaintiff's failure to promote claims were not ultimately related to compensation issues, their timeliness was unaffected by the Lilly Ledbetter Act).

As to Canaday's equitable arguments, he contends the 45-day limitations period should be delayed or tolled because he did not suspect discrimination in the failure to give him priority referral

consideration for re-promotion to GS-12 and the failure to grant him a temporary promotion with pay and career credit effective immediately upon the other supervisor's departure, until August 6, 2007, when the Air Force granted a female (Ms. Schwarz) a temporary promotion to Education Center Supervisor, with pay and career credit effective immediately upon the other supervisor's departure (*see* Doc. 16, Affidavit). Canaday contends Ms. Schwarz's temporary promotion caused him to prepare a "career snap shot" of the promotion history in the Education Center over the past sixteen (16) years, which revealed he had received less favorable treatment (*id.*).[5]

According to the law of the Eleventh Circuit, the 45-day charging period begins once the employee receives "unequivocal communication of the adverse employment decision." Wright v. AmSouth Bancorporation, 320 F.3d 1198, 1202 (11th Cir. 2003). However, the exhaustion period is not a jurisdictional prerequisite, but rather "a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 102 S. Ct. 1127, 71 L. Ed. 2d 234 (1982). Under equitable tolling, "a limitations period does not start to run until the facts which would support a charge of discrimination are apparent or should be apparent to a person with a reasonably prudent regard for his rights." Sturniolo v. Sheaffer, Eaton, Inc., 15 F.3d 1023, 1025 (11th Cir. 1994). The purpose of this rule is to prevent employers from escaping Title VII liability by giving victims pretextual, nondiscriminatory reasons for the employer's action. *See* Reeb v. Economic Opportunity Atlanta, Inc., 516 F.2d 924, 931 (5th Cir. 1975).[6] The Eleventh Circuit has explained that equitable tolling is appropriate until the point at which the plaintiff has "knowledge of facts sufficient to support a prima facie case of [ ] discrimination." Sturniolo, 15 F.3d at 1026. In the Eleventh Circuit, a plaintiff may establish a prima facie case of discrimination with respect to promotions by showing that: (1) he is a member of a protected class; (2) he is qualified for and applied for the position; (3) he was rejected despite his qualifications; and (4) other equally or less qualified employees who were not members of the protected class were promoted. *See* Springer v. Convergys Customer Mgmt. Group, Inc., 509 F.3d

---

[5] Canaday attached the "career snap shot" to his complaint (*see* Doc. 1 at 18–29).

[6] Decisions rendered by the United States Court of Appeals for the Fifth Circuit prior to September 30, 1981 are binding as precedent on the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981).

1344, 1348 n.2 (11th Cir. 2007); *see also* <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); <u>Crawford v. Carroll</u>, 529 F.3d 961, 975–76 (11th Cir. 2008). In order to establish a prima facie case of disparate treatment, a plaintiff must show that "[he] was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class." <u>Wilson v. B/E Aerospace, Inc.</u>, 376 F.3d 1079, 1087 (11th Cir. 2004). A plaintiff must show that a possible comparator is "similarly situated in all relevant respects" and is "nearly identical to the plaintiff." *Id.* at 1091. The important question for accrual purposes, then, is when did Canaday know, or when should he have known through the exercise of reasonable diligence, that he was not given priority referral consideration for re-promotion to GS-12 in 1991 because he is a Caucasian male, and when did he know or when should he have known, he was not granted a temporary promotion with immediately-effective pay and career credit in December of 1991 because he is a Caucasian male.

As to Canaday's first claim, his failure to receive priority referral consideration for re-promotion to GS-12 on December 11, 1991, or March 7, 1992, the evidence shows that Canaday received actual notice that he was not eligible for priority referral consideration for the GS-12 position on January 2, 1992 (*see* Doc. 1 at 40–41), and he knew that a minority female was selected for the position on March 7, 1992 (*id.* at 7, 23). Therefore, he reasonably should have known of the allegedly discriminatory treatment by March 7, 1992.

With regard to Canaday's claim that he was not granted a temporary promotion with immediately-effective pay and career credit in December of 1991, the summary judgment evidence shows that Canaday knew or should have known of the factual basis for his claim, through the exercise of reasonable diligence, not later than May of 2004. Canaday was aware that his request for temporary promotion to supervisor was rejected on December 31, 1991 (*see* Doc. 1 at 6, 32). He was aware that a minority female was selected for the supervisor's position on March 7, 1992 (*id.* at 7, 23). He was aware on March 22, 1995, that he should have received the temporary promotion to supervisor from December 11, 1991 to March 7, 1992, since it was on that date that he received retroactive "career credit" (but not back pay) for the temporary promotion (*id.* at 7, 23–24; Doc. 23-1 at 28). Moreover, according to Canaday's "career snap shot" and the "Civilian Employee Career Brief" he submitted in response to the Air Force's motion to dismiss, he was aware

on May 1, 2004 that the Air Force granted him a temporary promotion to supervisor of the Education Center, immediately following the previous supervisor's departure, with immediately-effective pay and career credit (*see* Doc. 1 at 25–26; Doc. 23-2 at 40–43). Thus, Canaday was aware or should have been aware no later than May 1, 2004, that immediately-effective pay and career credit was available with a temporary promotion, that he was entitled to such a temporary promotion on December 11, 1991, and that a minority female was selected to fill the supervisor's position temporarily held by him from December 11, 1991, through March 7, 1992. This evidence renders Canaday's assertion that he could not have discovered the facts supporting a claim of disparate treatment until August 6, 2007, unconvincing. Canaday has thus failed to demonstrate that August 6, 2007, is the accrual date for the 45-day limitations period, or that his initial contact with the EEO counselor on September 7, 2007, was otherwise within the 45-day charging period. Accordingly, his claims of discrimination should be dismissed for failure to timely exhaust administrative remedies.

In light of the foregoing discussion, the Air Force is entitled to summary judgment on Canaday's claims of discrimination.

Accordingly, it is **ORDERED**:

That Plaintiff's "Motion to Court, Request, Upon Leave of the Court" (Doc. 23) is **GRANTED in part** and **DENIED in part:**

The motion is **GRANTED** to the extent that the court will consider Plaintiff's documents attached to the motion as a response to Defendant's Motion to Dismiss; the motion is **DENIED** in all other respects.

And it is respectfully **RECOMMENDED**:

1.      That Plaintiff's Motion for Default Judgment (Doc. 15) be **DENIED**.

2.      That Defendant's Motion to Dismiss (Doc. 12) be **GRANTED**.

3.      That Plaintiff's "Motion to Court, Void Defendant's Motion to Dismiss or in the Alternative Motion for Summary Judgment" (Doc. 16) be **DENIED**.

4.      That Plaintiff's "Motion to Court, Defendant to Answer Every Element of Plaintiff's Claim by, to [sic] Admit or Deny Every Element and Defendant's Answer [sic] Must State any Affirmative Defenses" (Doc. 22) be **DENIED**.

5.    That judgment be entered in favor of Defendant Michael Wynne.

At Pensacola, Florida, this 26<u>th</u> day of April 2010.




/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.** <u>**Any different deadline that may appear on the electronic docket is for the court's internal use only**</u>**. A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636;** <u>**United States v. Roberts**</u>**, 858 F.2d 698, 701 (11th Cir. 1988).**